GRACE F. LINDHOLM, APPELLEE, V. HYMAN RESNICK ET AL., APPELLANTS.

272 N. W. 913

FILED APRIL 30, 1937.   No. 29956.

*Leon & White,* for appellants.

*John A. McKenzie, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and CLEMENTS, District Judge.

CLEMENTS, District Judge.

In this action plaintiff and appellee, Grace F. Lindholm, seeks to recover damages from the defendants and appellants, Hyman Resnick and Rose Resnick, for false and fraudulent representations alleged to have been made by them in connection with the sale to the plaintiff of a piece of real estate in the city of Omaha, Nebraska. A trial to a jury in the district court for Douglas county resulted in a verdict for the plaintiff in the sum of $1,500. A motion for a new trial was overruled, and defendants bring the action here on appeal.

The amended petition sets out in substance:

"1. That on or about the 8th day of June, 1931, the defendants sold to the plaintiff certain real estate in the city of Omaha, for a consideration of $18,700; that in order to induce the plaintiff to purchase said real estate, the defendants, and each of them, orally stated, represented and held out to the plaintiff:

"(a) That the defendants were the absolute owners of a certain easement, being an easement over a strip of land five feet wide and 80 feet long, lying immediately west of

the property being offered for sale by the defendants to the plaintiff.

"(b) That the easement consisted of the right to use said five-foot strip of land for any and all purposes, for entrance and exit purposes, for storage purposes, for the passage of light, air, and any and all other purposes.

"(c) That the right to use said easement and the title thereto had been wrongfully and without right questioned by certain persons known as Polyzois.

"(d) That the said litigation, which was without any merit whatsoever, had been instituted by the said Polyzois against the defendants, and was then pending in the district court, wherein the right of the defendants to the full enjoyment of said easement had been drawn in question.

"(e) That in the event that the plaintiff should purchase the property belonging to the defendants, that the defendants would convey to the plaintiff the said easement, and the defendants would indemnify the plaintiff against any loss that might be sustained by reason of the failure of the defendants to put the plaintiff in the full possession and enjoyment of said easement.

"(f) That the title of the defendants to said easement was so certain, clear, plain and unquestioned, and the litigation above referred to so frivolous, that the defendants could positively say that they themselves were the absolute owners of said easement.

"(g) That the defendants, and each of them, would reimburse the plaintiff for any and all losses she should sustain, in the event it would be determined that the defendants were not the absolute owners of said easement.

"(h) That the said Polyzois had no right, title, or interest whatsoever, of, in, or to said easement.

"(i) That the defendants were entirely familiar with all the facts connected with the litigation referred to, and were fully advised as to all questions of law that were raised and involved in said litigation, and that with their knowledge of the facts and the law, that they could say positively that they were the absolute and unquestioned

owners of the said easement over the said five-foot strip of ground.

"(j)   That the right of the defendants in the said easement was a valid, present, subsisting right, constituting a perpetual easement in favor of the land being conveyed to the plaintiff in fee simple.

"2.   Plaintiff further alleges that the statements made by the defendants, and each of them, as above set out, were false and untrue; that they were known by said defendants, and each of them, to be false and untrue at the time they were made, and were made by said defendants, and each of them, for the purpose of cheating and defrauding the plaintiff out of a large sum of money; that the plaintiff had no knowledge of the truth or falsity of the statements and representations so made to her by the defendants, and each of them; that she relied upon said statements, believed the same to be true, and, relying thereon, did purchase from said defendants a certain tract of land in the city of Omaha, Nebraska, including the easement above referred to, and did pay therefor the sum of $18,700."

Then follows an allegation that plaintiff never got possession of said five-foot strip and that she was damaged in the sum of $3,000. A demurrer to the petition, on the grounds that it does not state facts sufficient to constitute a cause of action and for an improper joinder of causes of action, was filed and overruled. An answer was then filed in which the defendants deny that they made any false or fraudulent representations to plaintiff, allege that she had knowledge of all the facts and circumstances relating to the title of said strip of ground and the litigation pending in relation thereto, and that she requested and received from the defendants an indemnity bond to protect and indemnify her in the event said litigation was decided adversely to the defendants. The plaintiff's reply was a general denial.

We have set out the allegations of the pleadings at some length because it is strenuously contended that the petition does not state a cause of action and that defendants' de-

murrer should have been sustained. While this is not at all free from doubt, we are disposed to hold that, if all the material allegations of the petition are taken to be true, which must be done in considering a demurrer, the petition is sufficient to state a cause of action and the demurrer was rightfully overruled.

The next consideration is: Does the evidence sustain the allegations of the petition and is it sufficient to support the verdict? There is some conflict in the testimony as to just what was said and done by the parties in making the sale of the property in question. In our consideration we will assume, where there is a conflict, that the evidence submitted by the plaintiff is true. Assuming this, it appears, on the 9th day of June, 1931, and for sometime prior thereto, the defendants, Hyman Resnick and Rose Resnick were the owners of a certain brick business property, consisting of a brick building containing four rooms suitable for and being used for store purposes. This building was situated at the northwest corner of Thirty-third and Cass streets, in Park Place Addition to the city of Omaha. At the rear of this building and located on property belonging to a party by the name of Polyzois was a ten-foot strip of pavement used as an alley. Defendants claimed an easement in the five-foot strip of this pavement that adjoined the building in question. This claim was disputed by Polyzois and an action had been brought in the district court for Douglas county to determine the rights of the parties to this strip. This action had terminated in a decision of the district court upholding the right of defendants to an easement in the strip. An appeal from this decision had been taken to this court. Sometime prior to June 9, 1931, negotiations were entered into between the plaintiff and defendants for a sale of this property to the plaintiff; plaintiff being represented in the negotiations by her son, a law student, who was in the habit of transacting business for her; defendants being represented by Frank B. Heintze and Fred A. Skow, their agents, for the sale of the property.

On the 9th day of June these negotiations had progressed

to a point where the parties assumed the deal could be closed and they met in the office of Fred A. Skow in the First National Bank Building for that purpose. There were present Mr. Resnick, Mr. Skow, Mr. Heintze, Mrs. Lindholm and her son. It does not appear that prior to this meeting the plaintiff had any knowledge that the defendants' right to the easement in question was in litigation, but she had employed an attorney, one Kenneth S. Finlayson, to examine the title to the property and to assist her in closing the deal. While the parties were in Mr. Skow's office and before the deal had been closed, the purchase money paid or the deed delivered, Mr. Finlayson came into the office and said:

"It appeared that that title was in litigation and he didn't know anything about it, had just found out, and commenced to question Resnick about it, and Resnick said, well, that didn't amount to anything; he said there had been a little trouble there with Polyzois but the thing had been settled and he had won, and there wasn't anything to it. * * * Our attorney said, yes; it did amount to something; he said the thing had been appealed. * * * Resnick said, well, he knew it didn't amount to anything; he said he was familiar with all the facts, he had been a party to the deal; there was absolutely nothing to their claim— Polyzois was just trying to get blood money out of it, wanted something for nothing, * * * that he didn't have any lawsuit, * * * it was just a question of whether he would pay him a little money to get rid of him. * * * When it got to the supreme court they would throw it out. He said they had decided in his favor in the district court and there wasn't any question about it. * * * Our attorney said, well, maybe, it don't amount to anything, he didn't know anything about the case, but as far as I am concerned, I cannot approve it. I am acting as Mrs. Lindholm's attorney, and as long as the thing has been appealed there is always a possibility of the supreme court reversing the decision of the lower court; maybe it don't amount to anything, but as far as I am concerned, I don't think I will advise her to

go through with it the way it stands. * * * Resnick said he would put up a $1,000 bond to guarantee his word that he absolutely owned that five feet; he was giving it to her in the deed, and when she got it in the deed she would have the absolute right to use that, there wouldn't be any question about that at all. He said there was nothing to worry about, he owned that five feet. * * * He would absolutely stand back of his word; he was acting in good faith, and would absolutely guarantee to stand back of his word that he owned that five feet. * * * Finlayson said, well, all right, we will put up the bond then."

Mrs. Lindholm, in her testimony, details the same conversation as follows: "Well, Mr. Finlayson came in and he said he had discovered it was in litigation, and he said to Mr. Resnick, how about this? And Mr. Resnick said that it had been in court, but he won the case. Then Mr. Finlayson said, well, it was carried up and Mr. Resnick said, well, if it was carried up, * * * it would be thrown out of court, because there was nothing to it. He said he owned that five feet and he had a right to deed it to me, he could sell it; * * * and this Polyzois, all he wanted to do was just to make him trouble; he wanted to get some money out of it, just wanted to work him for some money. He said he didn't have any right to it, that he had a right to it, that Mr. Resnick owned it, and he could deed it to me." She was then asked: "Now, do you recall whether there was anything said about a bond there at that time?" And she answered: "Well, Mr. Finlayson said it might be reversed in the supreme court, and Mr. Resnick said it would probably be thrown out of court because this man was just trying to work him for some money, and if necessary he would put up this bond to show he meant to do the right thing, and he would stand back of his word. * * * Mr. Finlayson said he didn't know just what the case was, but if he was willing to put up this bond he thought it would be all right."

After this conversation a bond was drawn by Mr. Finlayson. This bond was for the sum of $1,000 and was

signed by Hyman Resnick and Rose Resnick and the United States Fidelity & Guaranty Company. The bond was delivered to Mrs. Lindholm, purchase money paid, and deed delivered and recorded. Mrs. Lindholm took possession of the property, used the five-foot strip for about one and one-half years when the decision rendered by the Douglas county court was reversed by this court. After the determination of the case Polyzois built a tight board fence at the edge of the five-foot strip preventing ingress and egress from the rear of the store building and shutting light and air away from the store rooms, and the plaintiff's title to said easement entirely failed.

We have not attempted to quote all the evidence of the witnesses relative to the conversation of the parties. Much of it consisted of repetitions. We think we have given a fair summary of the evidence upon which the plaintiff relied to establish her claim of false and fraudulent representations.

In determining whether the evidence is sufficient to establish actionable fraud two vital questions must be answered: First, were the statements made by defendants that they were the owners of the easement in question, had a right to sell it, and that the litigation then pending would so determine, statements of known facts upon which the plaintiff had a right to rely without further investigation? Second, did the plaintiff rely on such statements?

Whether a statement, by one offering property for sale, that he is the owner of and has the right to sell it is a statement of a fact or an expression of an opinion depends on the circumstances surrounding the transaction. Where, as in this case, it was known to the purchaser that the title to the property was in dispute and that litigation was pending in a court to determine the ownership and that the rights of the parties in the property depended upon the future action of a court, statements of the seller that he owned the property, had a right to sell it, and that the court would so determine, even if couched in positive language, can only be taken as an expression of opinion.

It is a matter of common knowledge, chargeable to everyone, that no one can state as a matter of fact what the future action of a court will be on litigation pending before it. The case of *Hurlbert v. T. D. Kellogg Lumber & Mfg. Co.*, 115 Wis. 225, 91 N. W. 673, is in point. This was an action for the contract price of saw logs. Defendant answered that, before the execution of the contract, plaintiff fraudulently represented that he owned the land from which the logs were cut and owed a certain sum on the purchase price, and solicited a loan of defendants to pay such debt agreeing to give defendant a mortgage on the land and deliver the logs free of charge. The court said page 227 of the opinion:

"It is said that fraud is not sufficiently alleged, in that the charge of fraud is a general allegation, and relates to an opinion upon a question of law, and not to a matter of fact. Doubtless, the question whether a given title is a good title or not is a question of opinion merely; but a direct representation made by one man to another that he has a fee title to certain described real estate cannot be considered as necessarily a mere legal opinion. The circumstances may show, perhaps, that it was a mere opinion as to the validity of a certain title, and was so understood by the parties, in which case, of course, fraud cannot be predicated upon it; but, on the other hand, the circumstances under which it was given may demonstrate that it was intended and understood as a representation of fact, and, if such is the case, and it was relied upon to the damage of the other party, it becomes an actionable fraud."

We think the circumstances in this case clearly show that the statements were not taken or understood to be statements of known facts, but were understood to be expressions of opinion only. To every assertion of the defendants that they were the owners of the easement and the court would so hold, plaintiff's attorney answered: "That may be so, but the case has been appealed and may be reversed. We never can know what the court will do." We are constrained to hold that the statements relied upon were not

statements of known facts which the plaintiff had a right to rely upon without further investigation, but were statements of opinion only and therefore not actionable.

Even if it were conceded that the statements of defendants were as to facts, actionable in a proper case, it is apparent that plaintiff did not rely upon them. It must be remembered that the plaintiff in the negotiations leading up to this sale was represented by an attorney; that this attorney knew of the litigation over the easement and advised the plaintiff in relation thereto; that he refused to accept as facts the statements of the defendants that the litigation was frivolous and would be determined in favor of defendants. He recognized, as he should, that these statements could only have the weight of opinions. He advised his client, in effect, not to rely on the defendants' statement and refused to approve the sale. To the statements of the defendants that the litigation amounted to nothing, that they owned the easement and had a right to sell it, and that the court would so hold, he answered: "I am acting as Mrs. Lindholm's attorney, and as long as the thing has been appealed there is always a possibility of the supreme court reversing the decision of the lower court; maybe it don't amount to anything, but as far as I am concerned, I don't think I will advise her to go through with it the way it stands."

When the suggestion of an indemnity bond was made, the attorney said: "Well, all right, we will put up the bond then." He drew the bond, had it signed by the principals and surety, saw it delivered to the plaintiff, and acquiesced in the closing of the deal. We think the evidence clearly shows that plaintiff recognized that the statements of defendant as to title were expressions of opinion only, that she refused to rely upon them and only consented to complete the deal when an indemnifying bond was given her.

There are many cases that hold a vendee is justified in relying upon a representation in all cases where the representation is a positive statement of a fact and an investigation is necessary to discover it. We know of no case that

holds that such a representation can be the basis for the recovery of damages, when it clearly appears that it was not relied upon and where the vendee has demanded and received a bond to indemnify against loss by reason of a failure of title.

Complaint is made that the trial court erred in the giving of instruction No. 4 on its own motion. This instruction is as follows: "You are instructed that if you find from the evidence that plaintiff had full knowledge of the dispute and litigation over the five-foot strip, nevertheless, she would be entitled to rely upon any representations of fact made by defendants regarding their right and title to said easement, and if false representations were made with respect thereto and plaintiff was thereby induced to make the purchase which she would not otherwise have done, plaintiff may recover if she has established all the matters required to be proved by her in instruction No. 3." This instruction is not applicable to the facts in this case and is therefore erroneous.

In consideration of the foregoing, the judgment of the trial court will have to be reversed.

REVERSED AND DISMISSED.